UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHARLES A. KING, )
 )
    *Plaintiff* )
 )
v. ) Civil No. 09-337-P-H
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
    *Defendant* )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that he is disabled by left knee arthrofibrosis, ankylosis of the right elbow, complex regional pain syndrome of the left knee, lumbar spine back pain secondary to gait disturbance and left lower leg discrepancy, and depression, capable of returning to past relevant work. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of arthrofibrosis of the left knee, complex regional pain syndrome of the left knee, status post distal right elbow fracture, and low back pain, Finding 3, Record at 16; that he did not have an

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

impairment or combination of impairments that met or medically equaled the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 4, *id.* at 18; that he had the residual functional capacity ("RFC") to perform light work involving lifting 20 pounds occasionally and 10 pounds frequently, standing and walking for up to three hours in an eight-hour day, no use of foot controls requiring repetitive motion with the lower extremities, no use of the right upper extremities for pushing and pulling, no climbing ladders, ropes, and scaffolds, occasional climbing of ramps and stairs, no balancing, and occasional stooping, kneeling, crouching, and crawling, Finding 5, *id.* at 18; that he was capable of performing past relevant work as a telemarketer, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id.* at 22; and that he, therefore, had not been under a disability, as defined in the Social Security Act, from December 9, 2004, through the date of the decision, October 26, 2007, Finding 7, *id.* at 23.[2] The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R.

---

[2] The plaintiff was insured for purposes of SSD benefits through December 1, 2009, *see* Finding 1, Record at 16, subsequent to the date of the decision.

§§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's statement of errors also implicates Step 3 of the sequential process. At Step 3, a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals the Listings. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R §§ 404.1525(c)(3), 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

## I. Discussion

The plaintiff seeks reversal and remand on either of two bases: that the administrative law judge (i) failed to give adequate weight to the RFC opinions of a treating nurse practitioner, Marianne Wyer, F.N.P.-C, or a consulting orthopedic surgeon, Frank A. Graf, M.D., and (ii) erroneously determined that the plaintiff's impairments did not meet Listing 1.02A. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 11) at 2-15. I find no error and, hence, recommend that the court affirm the decision.

## A. Handling of RFC Opinions

The plaintiff asserts that he became disabled on December 9, 2004, after he slipped and fell, reinjuring his left knee, which prior thereto had been stable following surgery in 1987. *See* Record at 34, 37, 289. The record before the administrative law judge contained five opinions of medical professionals regarding the plaintiff's RFC in the wake of his slip-and-fall injury: an opinion of Disability Determination Services ("DDS") consulting examiner Stephen Doane, M.D., dated June 7, 2005, *see id*. at 193-95; an opinion of DDS nonexamining consultant Iver C. Nielson, M.D., dated June 17, 2005, *see id*. at 196-203; an opinion of DDS nonexamining consultant James Hall, M.D., dated October 20, 2005, *see id*. at 236-43; the opinion of treating nurse practitioner Wyer, signed by her supervisor Jeffrey Ray, D.O on December 16, 2006, *see id*. at 284-88; and the opinion of examining consultant Dr. Graf, dated August 29, 2007, *see id*. at 295-98.

Wyer found the plaintiff, *inter alia*, limited to sitting for no more than 30 minutes at a time, standing for no more than 15 minutes at a time, and sitting or standing/walking for less than two hours in an eight-hour workday. *See id.* at 285-86. She indicated that he would "most likely" need a cane or other assistive device when engaging in occasional standing/walking, that he needed a job permitting him to shift positions at will from sitting, standing, or walking, and that, on average, he would likely be absent from work more than four days per month as a result of his impairments or treatment. *See id*. at 286-87.

Dr. Graf found the plaintiff, *inter alia*, limited to sitting for no more than five minutes at a time, standing for no more than five minutes at a time, and sitting or standing/walking for less than two hours in an eight-hour workday. *See id*. at 296. He indicated that the plaintiff had to use a cane or other assistive device when engaging in occasional standing/walking, needed a job

4

permitting him to shift positions at will from sitting, standing, or walking, and that, on average he would likely be absent from work more than four days per month as a result of his impairments or treatment. *See id*. at 297-98.

The administrative law judge adopted an RFC largely consistent with those found by the DDS expert consultants, in particular Dr. Hall, and discounted the opinions of Wyer and Dr. Graf. *See id*. at 21-22; *compare* Finding 5, *id*. at 18 *with id*. at 237-40. The plaintiff contends that the administrative law judge failed to afford adequate weight to the Wyer and Graf RFC opinions. *See* Statement of Errors at 2-10. However, I find that he gave both opinions adequate consideration and rejected them for sufficient reason. There is, thus, no basis on which to disturb his RFC finding. *See, e.g., Rodriguez v. Secretary of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir. 1981) ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the administrative law judge], not for the doctors or for the courts.").

## 1. Wyer Opinion

As the plaintiff acknowledges, Wyer, a nurse practitioner, is not an "acceptable medical source" as that term is defined in 20 C.F.R. §§ 404.1513(a) and 416.916(a). *See* Statement of Errors at 3-4. The opinions of a treating source who is not an "acceptable medical source" may not be used to establish the existence of an impairment, but they may be considered as evidence of the severity of an impairment, and its effect on ability to work, once its existence has been established. *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). While the commissioner has described opinions from such practitioners as "important" and has directed that they "be evaluated on key issues such as impairment severity and functional effects," Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp.

2010) ("SSR 06-03p"), at 330, "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' are the most qualified health care professionals[,]" *id.* at 332 (internal quotation marks omitted).

> SSR 06-03p further explains:
>
> [T]he case record should reflect the consideration of opinions from medical sources, who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

SSR 06-03p at 333. Only the opinions of "treating sources," defined as "acceptable medical sources" who have established a treatment relationship with a claimant, *see* 20 C.F.R. §§ 404.1502, 416.902, are entitled to "controlling weight," and only as to the nature and severity of a claimant's impairments, *see* Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Ruling 1983-1991 (Supp. 2010) ("SSR 96-2p"), at 112.

The question of a claimant's RFC is an issue reserved to the commissioner, with respect to which even the opinions of treating sources are accorded no "special significance[,]" 20 C.F.R. §§ 404.1527(e)(2)-(3), 416.927(e)(2)-(3), although administrative law judges must supply "good reasons" for discounting such opinions of treating sources, *see id.* §§ 404.1527(d)(2),

416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion"); *see also, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

The administrative law judge fulfilled applicable requirements with respect to the Wyer opinion, expressly considering it, explaining the weight afforded to it, and providing adequate discussion to enable a subsequent reviewer to follow his reasoning. In particular, he noted that he declined to afford it weight because it was (i) contradicted by the plaintiff's own testimony, (ii) not supported by contemporaneous medical records, and (iii) rendered by an individual who was not an "acceptable medical source" and thus not entitled to controlling weight. *See* Record at 21. While SSR 06-03p does not expressly require that administrative law judges provide "good reasons" for discounting the opinion of a source who is not an "acceptable medical source," *see* SSR 06-03p at 333, the administrative law judge did that as well.

As the administrative law judge noted, *see* Record at 21, the plaintiff testified at hearing that he could stand for an hour or an hour and a half before he had to sit down, *see id*. at 41, and could sit for an hour before he had to get up and walk around, *see id*. at 43. The administrative law judge reasonably deemed that testimony inconsistent with Wyer's finding that he could stand for no more than 15 minutes at a time and sit for no more than 30 minutes at a time. As the

7

administrative law judge also observed, *see id*. at 21, the plaintiff stated, in response to the following query in a function report questionnaire, "How often do you shop and how long does it take?": "once wk 2½ hours[.]" *Id*. at 121. The administrative law judge concluded that "weekly grocery shopping for two and a half hours . . . involves continuous walking and standing[,]" a further contradiction of Wyer's RFC finding. *Id*. at 21.

The plaintiff argues at some length that the administrative law judge's assumption that he engaged in "continuous walking and standing" while grocery shopping is unsupported by the evidence, given that he never indicated that he stood or walked continuously without rest breaks and that he stated elsewhere in the same questionnaire, completed on February 21, 2005, that he could not bear weight on his left leg and could not walk at all without crutches, assertions that are corroborated by the contemporaneous medical evidence. *See* Statement of Errors at 4-7; Record at 123, 164, 180, 222, 224.

Nonetheless, the administrative law judge drew a reasonable inference that the plaintiff's answer to the query indicated a capacity to walk and stand continuously for two and a half hours. In any event, even assuming *arguendo* that the inference was unsupportable, that is immaterial. As noted above, the administrative law judge supportably determined that the Wyer report was contradicted by the plaintiff's hearing testimony.

The administrative law judge further reasonably deemed Wyer's RFC inconsistent with the contemporaneous medical evidence. As the plaintiff points out, *see* Statement of Errors at 7, the administrative law judge did not identify the records to which he referred, and he offered no further analysis, *see* Record at 21. Nonetheless, the plaintiff admits that when Wyer completed the RFC questionnaire on September 3, 2006, she had last seen him on March 31, 2006, at which time she noted that he was using Percocet and Vicodin for treatment of his pain with a good

response. *See* Statement of Errors at 7; Record at 322. Wyer also noted, in that treatment note, that the plaintiff had no specific complaints that day. *See* Record at 322.

The administrative law judge finally permissibly gave less weight to the opinion of Wyer on the basis that she was not an "acceptable medical source." *See, e.g.*, SSR 06-03p at 332; *Kresyman v. Astrue*, No. 09-00507-CV-W-NKL, 2010 WL 670248, at *5 (W.D. Mo. Feb. 22, 2010) ("The opinion of a treating medical source, if not a physician or other acceptable medical source, should still be considered, but those other medical source opinions are entitled to less weight than that of a treating physician.").

He committed no error in his handling of the Wyer opinion.

## 2. Graf Opinion

Nor did the administrative law judge err in his handling of the Graf RFC opinion. Dr. Graf was an examining, rather than treating, source, and his opinion, like that of Wyer, addressed RFC, an issue reserved to the commissioner with respect to which the opinions of even treating sources are accorded no "special significance[.]" 20 C.F.R. §§ 404.1527(e)(2)-(3), 416.927(e)(2)-(3). As discussed below, the administrative law judge offered good reasons for rejecting the Graf opinion. Even as to a treating source, an administrative law judge need do no more. *See, e.g., id.* §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-8p at 150.

The administrative law judge considered, but rejected, the Graf RFC opinion on the bases that (i) it was inconsistent with the plaintiff's testimony and medical record, (ii) not supported by medically acceptable signs, symptoms, and/or laboratory findings, (iii) not consistent within the questionnaire, (iv) unsupported by other medical evidence of record, and (v) incomplete, in that Dr. Graf repeatedly referred the reader to his narrative rather than explaining the basis for his conclusions. *See* Record at 21-22.

9

The administrative law judge supportably found the Graf opinion, which limited the plaintiff to sitting for no more than five minutes at a time and standing for no more than five minutes at a time, *see id*. at 296, inconsistent with the plaintiff's hearing testimony, *see id*. at 41, 43. He also reasonably deemed Dr. Graf's opinion that the plaintiff needed to use a cane or other assistive device, *see id*. at 297, inconsistent with other evidence of record to the extent it referenced a cane, *see, e.g.*, 38-39, 194, 294. Finally, he reasonably considered Dr. Graf's repeated use of the phrase "see narrative," *see id*. at 295-98, a reference to a six-page-long, single-spaced report, *see id*. at 289-94, an inadequate substitute for identification of the bases for specific RFC findings.

He committed no error in his handling of the Graf report.

### B. Listing 1.02A

The plaintiff finally contends that the administrative law judge erred in failing to find that his impairments met Listing 1.02A, despite ample evidence of record demonstrating his difficulty in ambulating effectively. *See* Statement of Errors at 11-15. This complaint is without merit.

To meet Listing 1.02 (major dysfunction of joint(s) due to any cause), a claimant must show, *inter alia*, involvement of one major peripheral weight-bearing joint such as a knee, "resulting in inability to ambulate effectively, as defined in 1.00B2b[.]" Listing 1.02A. In turn, Listing 1.00B2b defines an "inability to ambulate effectively" as

> an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

Listing 1.00B2b(1). Listing 1.00B2b further provides, in relevant part, that to be able to ambulate effectively

> individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Listing § 1.00B2b(2).

The record reveals that the plaintiff used crutches for a few months following his knee injury in December 2004. *See, e.g.,* Record at 164, 180, 222, 224. He has since continuously used a knee brace to stabilize his knee. *See, e.g., id*. at 39-40, 221, 290. He testified that he sometimes uses a cane, for example, while grocery shopping, *see id*. at 38-39, and treating and examining sources have made note that he was not using a cane on the day of his visit, *see, e.g., id*. at 194, 294.

Although, without doubt, the plaintiff had difficulty ambulating even with the assistance of a knee brace, *see, e.g., id*. at 218 (plaintiff noted by Wyer on October 18, 2005, to be walking with a pronounced limp and favoring his left side), 194 (plaintiff noted by Dr. Doane on June 7, 2005, to be ambulating only with great difficulty with a marked limp and not being able to extend his left leg), he did not display "ineffective ambulation" for purposes of Listing 1.02, in the sense that he had "insufficient lower extremity functioning . . . to permit independent

ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Listing 1.00B2b(1).[3]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of October, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[3] Dr. Graf stated that the plaintiff's condition met Listing 1.02. *See* Record at 294. However, he did not explain how, apart from observing that the plaintiff was non-ambulatory without his left knee brace and required an orthotic device, the brace, for ambulation. *See id.* As explained above, that circumstance does not meet the criteria of Listing 1.02A. Moreover, Dr. Graf did not assess the effectiveness of the plaintiff's ambulation when using his cane. "When an individual with an impairment involving a lower extremity or extremities uses a hand-held assistive device, such as a cane, crutch or walker, examination should be with and without the use of the assistive device unless contraindicated by the medical judgment of a physician who has treated or examined the individual." Listing 1.00J.